Leonard Benowich (LB-6129)
Benowich Law, LLP
1025 Westchester Avenue
White Plains, New York 10604
(914) 946-2400

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

THOMAS DECHIARO,                         08 Civ. _____ (___)(___)

                   Plaintiff,        **COMPLAINT**

   -against-

D & S CONSULTANTS, INC., and
STEVEN DECHIARO,

                   Defendants.

-------------------------------------------------------x

08 CIV. 1199 BRIEANT

     Plaintiff, Thomas DeChiaro, by his attorneys, Benowich Law, LLP, as and for his Complaint against D & S Consultants, Inc. and Steven DeChiaro, respectfully alleges as follows:

### Nature of the Action

    1.    This is an action for more than $2.975 million in damages arising out of defendants' breach of (a) an agreement to pay plaintiff a finder's fee for finding investors to invest in defendant D & S Consultants, Inc., and (b) plaintiff's written employment agreement.

### Parties; Jurisdiction; Venue

    2.    Plaintiff Thomas DeChiaro ("Plaintiff") is a citizen of the State of New York, residing at 10 Gilead Road, Mahopac, New York.

1

3. Defendant D & S Consultants, Inc. ("DSCI") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 12 Christopher Way, Eatontown, New Jersey.

4. Defendant Steven DeChiaro ("DeChiaro") is a citizen of the State of New Jersey. DeChiaro is president, CEO and Chairman of DSCI, and resides at 231 Verdant Court, Freehold, New Jersey 07728. DeChiaro is Plaintiff's brother.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because the dispute is among citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**Background Facts Common to All Counts**

7. DSCI was formed by DeChiaro.

8. DSCI was a defense contractor. In the early 2000s, DeChiaro sought to transition DSCI from a purely defense-oriented contractor and to develop civil and commercial applications for the software and other products and applications it had been selling to the United States Government and other defense-industry contractors.

A. **The Finder's Fee Agreement**

9. As part of his plan to revamp DSCI's business and customer-base, DeChiaro asked Plaintiff, his brother, for help in raising the investor capital that would be necessary to finance such a transition and the development of DSCI's business.

10. DeChiaro promised Plaintiff that DeChiaro and/or DSCI would pay Plaintiff a

finder's fee for all investor capital he succeeded in bringing to DSCI. DeChiaro promised Plaintiff that Plaintiff would be paid (a) 5% of all sums for which he was "directly" responsible for bringing into DSCI, and (b) 3% of all sums for which he was "indirectly" responsible for bringing into DSCI.

11. Acting on DeChiaro's promise of compensation as described above, Plaintiff was successful in bringing to DSCI more than $25 million in investment capital.

12. Plaintiff was "directly" responsible for securing the investment of a total of $7.5 million from two individual investors, for which he is entitled to a finder's fee of 5%, or $375,000.

13. In addition, one of the individual investors that Plaintiff introduced to DSCI became a member of the DSCI Board and subsequently introduced Lehman Brothers to DSCI.

14. Lehman Brothers subsequently invested $20 million or more into DSCI, and two representatives of Lehman Brothers now sit on the Board of DSCI.

15. Plaintiff thus was "indirectly" responsible for introducing Lehman Brothers to DSCI and, under the terms of his agreement with Defendants, Plaintiff is entitled to a finder's fee of not less than 3% of the $20 million Lehman Brothers invested in DSCI, or a finder's fee of $600,000.

16. Defendants have acknowledged their indebtedness to Plaintiff for payment of the foregoing finder's fees and, although DeChiaro has assured Plaintiff that such fees will be paid, he has failed and refused to pay or authorize DSCI's payment thereof.

B. **Plaintiff's Employment Agreement**

17. Subsequently, Plaintiff and DSCI entered into a written employment agreement

3

dated as of October 2005 pursuant to which Plaintiff was employed by DSCI as its Group President for the Commercial Products Group ("Agreement").

18. The Agreement was for a "Term" of three (3) years, through October 31, 2008; Plaintiff also had the right to renew the Agreement for an additional two-year term. (§1.1)

19. Under the Agreement, Plaintiff was to devote his full working time and attention to DSCI's business, and to the promotion of DSCI's business:

> During the term of employment, Group President shall serve as the Company's Commercial Products Group and Group President shall have the authority, functions, duties, powers, and responsibilities normally associated with such positions and such additional authority, functions, duties, powers and responsibilities as may be assigned to Group President from time to time by the Company consistent with Group President's senior position with the Company.

20. Under that Agreement, Plaintiff also is:

   a. to be paid a base salary of not less than $156,000 *per annum* (§3.1);

   b. eligible for "all Company Bonus Plans in accordance with the Company's policies" (§3.2);

   c. entitled to receive 100 shares of the Company's stock, all of which vested as of the second anniversary of the Agreement (§3.3), in October 2005;

   d. eligible to participate in DSCI's 401k Retirement plan and "any other retirement or pension plans the Company offers or that may come into existence" (§3.5); and

   e. entitled to all benefits offered to DSCI employees. (§3.6)

21. Under the Agreement, Plaintiff was permitted to perform his duties and to work from an office in New York that was to be established, maintained and staffed by and at the

expense of DSCI. (Agreement, §8.3)

22. The Agreement could be terminated by the Company for "cause." "Cause" is defined in section 4.1 as:

> (a) [Plaintiff's] conviction (treating a nolo contendere plea as a conviction) of a felony (whether or not any right to appeal has been or may be exercised), (b) willful refusal without proper cause to perform [his] obligations under this Agreement, (c) fraud, embezzlement or misappropriation, or (d) because of [Plaintiff's] breach of any of the covenants provided for in Section 9.

23. The Agreement also provides that in the event DSCI seeks to terminate Plaintiff's employment for "cause," because of a purported refusal to perform his obligations under the Agreement, Plaintiff is entitled to written notice thereof and not less than thirty (30) days to cure and perform his obligations. (Agreement, §4.1)

24. Under section 4.2 of the Agreement, Plaintiff has the right to terminate the Agreement, on notice to DSCI, for DSCI's material breach of the Agreement, including DSCI's violation of section 2 of the Agreement with respect to Plaintiff's "title, reporting lines, duties or places of employment."

25. Section 2.1 of the Agreement provides that during his employment, DSCI may not diminish Plaintiff's title or authority, and may not cause him to report to anyone other than DeChiaro, DSCI's Chief Executive Officer.

### 1. *Plaintiff's Notice of Termination of the Agreement*

26. By letter dated November 26, 2007, Plaintiff notified Defendants that he was terminating the Agreement due to DSCI's material breach thereof (the "Notice"). In his Notice,

Plaintiff specified the following as the material breaches:

    a. failing to pay Plaintiff his contractually-required wages §3.1;

    b. failing to provide Plaintiff with the administrative support for the Somers, New York office, as required by §8.3 of the Agreement; and

    c. diminishing Plaintiff's authority by reassigning primary responsibility for the commercial systems group to someone other than Plaintiff and refusing to respond to Plaintiff's voice and e-mail messages, and thus refusing to allow Plaintiff to report to DeChiaro, the CEO, as required by the Agreement.

27. Defendants have not attempted to cure, and they have not cured, any of the material breaches of the Agreement as specified in Plaintiff's Notice.

### 2. *Defendants' Retaliatory Notice of Termination*

28. Defendants responded to Plaintiff's Notice, not by curing or attempting to cure any of the specified "material breaches" of the Agreement. Rather, Defendants responded with their own letter dated November 29, 2007, in which they purportedly terminated the Agreement, "effective immediately," for "cause," based on the following trumped-up, non-existent and contractually insufficient grounds:

    a. failure to meet Revenue Targets for 2005, 2006 & 2007

    b. Disregard for tasking & deadlines

    c. Recurring failure to complete timesheets on time

    d. incorrectly completing timesheet (recording hours worked on days off)

    e. Repeated Failure to attend Business Development Meetings including most recent one held on November 1, 2007

    f. failure to be at corporate one week per month

    g. working from home

      h.    unreliable accessibility by cell phone; and

      i.    Failing to follow direct order of CEO not to attend IBM meeting scheduled for 4 pm on November 28, 2007

29.    None of the foregoing constitutes "cause" within the meaning of the Agreement.

30.    Defendants' Notice violates the Agreement because, *inter alia*, it fails to afford Plaintiff the notice and opportunity to cure that is required by the Agreement. Pursuant to section 4.1, Defendants' Notice is "not ...effective."

31.    Under the Agreement, the prevailing party is entitled to an award of its attorneys' fees.

### **Count I**

32.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as though fully set forth at length.

33.    By reason of the foregoing, defendants DeChiaro and DSCI have breached their promise to pay Plaintiff finder's fees in the amount of not less than $375,000 in respect of the investors for which he is "directly" responsible, and $600,000 in respect of the investor for which he is "indirectly" responsible.

34.    Plaintiff has been damaged, and defendants are liable to Plaintiff in an amount believed to be not less than $975,000.00, plus interest and attorneys' fees.

### **Count II**

35.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as though fully set forth at length.

36.    At defendants' express request, Plaintiff undertook to, and did, secure for

7

defendants investors who invested not less than $27.5 million in DSCI.

37. Upon information and belief, DeChiaro is the holder of approximately 50.2% of the stock of DSCI and, by reason of Plaintiff's successful solicitation and procurement of investment capital for DSCI, DeChiaro's DSCI stock is worth substantially more than it would have been absent such investment.

38. In equity and good conscience, defendants should not be permitted to retain the benefit of the investment capital they encouraged and induced Plaintiff to secure for them, without compensating Plaintiff therefor.

39. Accordingly, Plaintiff has been damaged, and defendants are liable to Plaintiff in an amount believed to exceed $975,000, plus interest and attorneys' fees.

## Count III

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as though fully set forth at length.

41. Defendants have breached the Agreement.

42. By reason of the foregoing, Plaintiff has been damaged, and defendants are liable to Plaintiff in an amount believed to exceed $2 million, plus interest and attorneys' fees.

## Count IV

43. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31, 41 and 42 as though fully set forth at length.

44. By reason of the foregoing, Plaintiff is entitled to a declaration from this Court that Defendants' Notice terminating the Agreement is ineffective, null and void, together with an award of Plaintiff's attorneys' fees in this action.

**WHEREFORE**, Plaintiff requests Judgment as follows:

A.  On Count I, for compensatory damages in the amount of not less than $975,000.00, plus interest and attorneys' fees;

B.  On Count II, for compensatory damages in the amount of not less than $975,000, plus interest and attorneys' fees;

C.  On Count III, compensatory damages in the amount of not less than $2 million, plus interest and attorneys' fees;

D.  On Count IV, for a declaratory judgment that defendants' purported Notice of Termination of the Agreement dated November 29, 2007 is null and void, and an award of attorneys' fees; and

E.  Such other and further relief as this Court shall deem just and proper.

Dated: February 5, 2008                    **BENOWICH LAW, LLP**

                                           By: _____
                                           Leonard Benowich (LB-6129)
                                           Attorneys for Plaintiff