Leonard Benowich (LB-6129)
BENOWICH LAW, LLP
1025 Westchester Avenue
White Plains, New York 10604
(914) 946-2400

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

| | |
|---|---|
| THOMAS DECHIARO, | 08 Civ. 1199 (CLB) |
| Plaintiff, | **DECLARATION OF LEONARD BENOWICH** |
| -against- | |
| D&S CONSULTING, INC. and STEVEN DECHIARO, | |
| Defendants. | |

------------------------------------------------------x

LEONARD BENOWICH, pursuant to 28 U.S.C. §1746, declares the following to be true and correct under the penalty of perjury:

1. I am a member of Benowich, Law, LLP, counsel of record for Plaintiff. Unless otherwise indicated, I have personal knowledge of the facts herein.

2. I submit this Declaration in opposition to Defendants' motion to dismiss the Complaint and to compel arbitration.

3.     Annexed hereto are true and correct copies of the following:

    **Exhibit 1:**    the Complaint in this Action; and

    **Exhibit 2:**    e-mail dated September 19, 2005 between plaintiff and defendant Thomas DeChiaro.

WHEREFORE, I respectfully request that defendants' motion be denied in all respects.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 10, 2008 at White Plains, New York.

/s/_____
Leonard Benowich

```
                                          EXHIBIT 1
```

Case 7:08-cv-01199-CLB   Document 4   Filed 03/10/2008   Page 3 of 17

Leonard Benowich (LB-6129)
Benowich Law, LLP
1025 Westchester Avenue
White Plains, New York 10604
(914) 946-2400

*Attorneys for Plaintiff*

FEB - 5 2008
USDC WP SDNY

**08 CIV. 1199**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

THOMAS DECHIARO,

           Plaintiff,

-against-

D & S CONSULTANTS, INC., and
STEVEN DECHIARO,

           Defendants.

------------------------------------------------------x

08 Civ. _____ (___)(___)

**COMPLAINT**   BRIEANT

Plaintiff, Thomas DeChiaro, by his attorneys, Benowich Law, LLP, as and for his Complaint against D & S Consultants, Inc. and Steven DeChiaro, respectfully alleges as follows:

### Nature of the Action

1.     This is an action for more than $2.975 million in damages arising out of defendants' breach of (a) an agreement to pay plaintiff a finder's fee for finding investors to invest in defendant D & S Consultants, Inc., and (b) plaintiff's written employment agreement.

### Parties; Jurisdiction; Venue

2.     Plaintiff Thomas DeChiaro ("Plaintiff") is a citizen of the State of New York, residing at 10 Gilead Road, Mahopac, New York.

1

3. Defendant D & S Consultants, Inc. ("DSCI") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 12 Christopher Way, Eatontown, New Jersey.

4. Defendant Steven DeChiaro ("DeChiaro") is a citizen of the State of New Jersey. DeChiaro is president, CEO and Chairman of DSCI, and resides at 231 Verdant Court, Freehold, New Jersey 07728. DeChiaro is Plaintiff's brother.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because the dispute is among citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**Background Facts Common to All Counts**

7. DSCI was formed by DeChiaro.

8. DSCI was a defense contractor. In the early 2000s, DeChiaro sought to transition DSCI from a purely defense-oriented contractor and to develop civil and commercial applications for the software and other products and applications it had been selling to the United States Government and other defense-industry contractors.

A. **The Finder's Fee Agreement**

9. As part of his plan to revamp DSCI's business and customer-base, DeChiaro asked Plaintiff, his brother, for help in raising the investor capital that would be necessary to finance such a transition and the development of DSCI's business.

10. DeChiaro promised Plaintiff that DeChiaro and/or DSCI would pay Plaintiff a

2

finder's fee for all investor capital he succeeded in bringing to DSCI. DeChiaro promised Plaintiff that Plaintiff would be paid (a) 5% of all sums for which he was "directly" responsible for bringing into DSCI, and (b) 3% of all sums for which he was "indirectly" responsible for bringing into DSCI.

11.  Acting on DeChiaro's promise of compensation as described above, Plaintiff was successful in bringing to DSCI more than $25 million in investment capital.

12.  Plaintiff was "directly" responsible for securing the investment of a total of $7.5 million from two individual investors, for which he is entitled to a finder's fee of 5%, or $375,000.

13.  In addition, one of the individual investors that Plaintiff introduced to DSCI became a member of the DSCI Board and subsequently introduced Lehman Brothers to DSCI.

14.  Lehman Brothers subsequently invested $20 million or more into DSCI, and two representatives of Lehman Brothers now sit on the Board of DSCI.

15.  Plaintiff thus was "indirectly" responsible for introducing Lehman Brothers to DSCI and, under the terms of his agreement with Defendants, Plaintiff is entitled to a finder's fee of not less than 3% of the $20 million Lehman Brothers invested in DSCI, or a finder's fee of $600,000.

16.  Defendants have acknowledged their indebtedness to Plaintiff for payment of the foregoing finder's fees and, although DeChiaro has assured Plaintiff that such fees will be paid, he has failed and refused to pay or authorize DSCI's payment thereof.

**B.    Plaintiff's Employment Agreement**

17.  Subsequently, Plaintiff and DSCI entered into a written employment agreement

3

dated as of October 2005 pursuant to which Plaintiff was employed by DSCI as its Group President for the Commercial Products Group ("Agreement").

18. The Agreement was for a "Term" of three (3) years, through October 31, 2008; Plaintiff also had the right to renew the Agreement for an additional two-year term. (§1.1)

19. Under the Agreement, Plaintiff was to devote his full working time and attention to DSCI's business, and to the promotion of DSCI's business:

> During the term of employment, Group President shall serve as the Company's Commercial Products Group and Group President shall have the authority, functions, duties, powers, and responsibilities normally associated with such positions and such additional authority, functions, duties, powers and responsibilities as may be assigned to Group President from time to time by the Company consistent with Group President's senior position with the Company.

20. Under that Agreement, Plaintiff also is:

    a. to be paid a base salary of not less than $156,000 *per annum* (§3.1);

    b. eligible for "all Company Bonus Plans in accordance with the Company's policies" (§3.2);

    c. entitled to receive 100 shares of the Company's stock, all of which vested as of the second anniversary of the Agreement (§3.3), in October 2005;

    d. eligible to participate in DSCI's 401k Retirement plan and "any other retirement or pension plans the Company offers or that may come into existence" (§3.5); and

    e. entitled to all benefits offered to DSCI employees. (§3.6)

21. Under the Agreement, Plaintiff was permitted to perform his duties and to work from an office in New York that was to be established, maintained and staffed by and at the

expense of DSCI. (Agreement, §8.3)

22. The Agreement could be terminated by the Company for "cause." "Cause" is defined in section 4.1 as:

> (a) [Plaintiff's] conviction (treating a nolo contendere plea as a conviction) of a felony (whether or not any right to appeal has been or may be exercised), (b) willful refusal without proper cause to perform [his] obligations under this Agreement, (c) fraud, embezzlement or misappropriation, or (d) because of [Plaintiff's] breach of any of the covenants provided for in Section 9.

23. The Agreement also provides that in the event DSCI seeks to terminate Plaintiff's employment for "cause," because of a purported refusal to perform his obligations under the Agreement, Plaintiff is entitled to written notice thereof and not less than thirty (30) days to cure and perform his obligations. (Agreement, §4.1)

24. Under section 4.2 of the Agreement, Plaintiff has the right to terminate the Agreement, on notice to DSCI, for DSCI's material breach of the Agreement, including DSCI's violation of section 2 of the Agreement with respect to Plaintiff's "title, reporting lines, duties or places of employment."

25. Section 2.1 of the Agreement provides that during his employment, DSCI may not diminish Plaintiff's title or authority, and may not cause him to report to anyone other than DeChiaro, DSCI's Chief Executive Officer.

### *1.  Plaintiff's Notice of Termination of the Agreement*

26. By letter dated November 26, 2007, Plaintiff notified Defendants that he was terminating the Agreement due to DSCI's material breach thereof (the "Notice"). In his Notice,

5

Plaintiff specified the following as the material breaches:

    a.    failing to pay Plaintiff his contractually-required wages §3.1;

    b.    failing to provide Plaintiff with the administrative support for the Somers, New York office, as required by §8.3 of the Agreement; and

    c.    diminishing Plaintiff's authority by reassigning primary responsibility for the commercial systems group to someone other than Plaintiff and refusing to respond to Plaintiff's voice and e-mail messages, and thus refusing to allow Plaintiff to report to DeChiaro, the CEO, as required by the Agreement.

27.    Defendants have not attempted to cure, and they have not cured, any of the material breaches of the Agreement as specified in Plaintiff's Notice.

### 2.   *Defendants' Retaliatory Notice of Termination*

28.    Defendants responded to Plaintiff's Notice, not by curing or attempting to cure any of the specified "material breaches" of the Agreement. Rather, Defendants responded with their own letter dated November 29, 2007, in which they purportedly terminated the Agreement, "effective immediately," for "cause," based on the following trumped-up, non-existent and contractually insufficient grounds:

    a.    failure to meet Revenue Targets for 2005, 2006 & 2007

    b.    Disregard for tasking & deadlines

    c.    Recurring failure to complete timesheets on time

    d.    incorrectly completing timesheet (recording hours worked on days off)

    e.    Repeated Failure to attend Business Development Meetings including most recent one held on November 1, 2007

    f.    failure to be at corporate one week per month

    g.    working from home

      h.    unreliable accessibility by cell phone; and

      i.    Failing to follow direct order of CEO not to attend IBM meeting scheduled for 4 pm on November 28, 2007

29.    None of the foregoing constitutes "cause" within the meaning of the Agreement.

30.    Defendants' Notice violates the Agreement because, *inter alia*, it fails to afford Plaintiff the notice and opportunity to cure that is required by the Agreement. Pursuant to section 4.1, Defendants' Notice is "not ...effective."

31.    Under the Agreement, the prevailing party is entitled to an award of its attorneys' fees.

## Count I

32.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as though fully set forth at length.

33.    By reason of the foregoing, defendants DeChiaro and DSCI have breached their promise to pay Plaintiff finder's fees in the amount of not less than $375,000 in respect of the investors for which he is "directly" responsible, and $600,000 in respect of the investor for which he is "indirectly" responsible.

34.    Plaintiff has been damaged, and defendants are liable to Plaintiff in an amount believed to be not less than $975,000.00, plus interest and attorneys' fees.

## Count II

35.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as though fully set forth at length.

36.    At defendants' express request, Plaintiff undertook to, and did, secure for

defendants investors who invested not less than $27.5 million in DSCI.

37. Upon information and belief, DeChiaro is the holder of approximately 50.2% of the stock of DSCI and, by reason of Plaintiff's successful solicitation and procurement of investment capital for DSCI, DeChiaro's DSCI stock is worth substantially more than it would have been absent such investment.

38. In equity and good conscience, defendants should not be permitted to retain the benefit of the investment capital they encouraged and induced Plaintiff to secure for them, without compensating Plaintiff therefor.

39. Accordingly, Plaintiff has been damaged, and defendants are liable to Plaintiff in an amount believed to exceed $975,000, plus interest and attorneys' fees.

## Count III

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as though fully set forth at length.

41. Defendants have breached the Agreement.

42. By reason of the foregoing, Plaintiff has been damaged, and defendants are liable to Plaintiff in an amount believed to exceed $2 million, plus interest and attorneys' fees.

## Count IV

43. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31, 41 and 42 as though fully set forth at length.

44. By reason of the foregoing, Plaintiff is entitled to a declaration from this Court that Defendants' Notice terminating the Agreement is ineffective, null and void, together with an award of Plaintiff's attorneys' fees in this action.

**WHEREFORE**, Plaintiff requests Judgment as follows:

A. On Count I, for compensatory damages in the amount of not less than $975,000.00, plus interest and attorneys' fees;

B. On Count II, for compensatory damages in the amount of not less than $975,000, plus interest and attorneys' fees;

C. On Count III, compensatory damages in the amount of not less than $2 million, plus interest and attorneys' fees;

D. On Count IV, for a declaratory judgment that defendants' purported Notice of Termination of the Agreement dated November 29, 2007 is null and void, and an award of attorneys' fees; and

E. Such other and further relief as this Court shall deem just and proper.

Dated: February 5, 2008                    **BENOWICH LAW, LLP**

By: _____
Leonard Benowich (LB-6129)
Attorneys for Plaintiff

9

**EXHIBIT 2**

## Tom DeChiaro

**From:** Steve Dechiaro [sdechiaro@dsci-usa.com]
**Sent:** Monday, September 19, 2005 3:31 PM
**To:** Tom DeChiaro
**Subject:** RE: Draft Term Sheet
**Signed By:** sdechiaro@dsci-usa.com

Tom:[Steve Dechiaro] comments [Steve Dechiaro]

Position/Title: President, DSCI Commercial Division (This positions reports to the [Steve Dechiaro] CEO at least until we decide the future, since success will require very close coordination with DSCI Core Divisions {SID & SAD} it does not make sense to bypass the CEO)
Current Employer: PROVIDE 2 WEEKS WRITTEN NOTICE (OK)
Multiple Jobs: Requires signing Employee Agreement prohibiting any other outside employment
(I sit on the BOD of another company that meets once a quarter and sometimes I am asked to do a speaking engagement – I assume this means no other Full Time Employment which is fine – so lets just be very clear.. OK)[Steve Dechiaro] we have NO problem as long as the Company is NOT a competitor [Steve Dechiaro] ALL DSCI employees are required to disclose ALL outside employment & affiliations
Start Date: on/or about 1 November (This should be good timing give or take 2 weeks)
Salary: $156,000 SALARIED (OK)
Job Transition Cost: $24,000 ($1.5K per month for 16 Months)
(Split the difference – so $13k Up front – then $1.5K for 16 Months for a total of $37K)[Steve Dechiaro] $30K MAX $2K per month for 15 months[Steve Dechiaro]
Computer: Retain possession of DSCI purchased PC (For admin, New machine for me)
Internet/Cell Phone: Company related expenses paid by DSCI (OK – and standard office supplies[Steve Dechiaro] IAW approved budgets)
Stock: 20 Shares fully vested (What is the value of 20 shares?) [Steve Dechiaro] Price is in flux until we close ongoing deals, should stabilize on/or about 1 Jan 2006
Other Comp: 401K (vesting [Steve Dechiaro] 25% per year ) , Medical Benefits (Now), Employee Stock Plan - vesting IAW Employee Handbook & Policy Manual ([Steve Dechiaro] Still working this to include ESPP, ESBP, ESOP )
Incentives: Cash & Stock Bonus tied to division performance – IAW BOD (OK – but since this is on the back end – it should be more attractive, if targets are met, then what was originally agreed to at the 2% level)
Term: 3 years – with options for more with Gurantees on both sides TBN (OK)
Relocation: Relocation to NJ will not required for this position & approved travel will be expensed IAW company policy (OK)
On-site @ DSCI HQs: Minimum 1 week per month (Average 1 week per month on-site DSCI and/or customer locations)
Admin Support: I would require a part time 25 – 35 hours a week admin/exec assistant to work local at my main office. Salary
range would be between $15 - $20 per hour and NO

2/5/2008

        BENEFITS will be required.

DSCI's CEO gets right to disapprove AA candidates (What criteria would be used to evaluate – my intention is NO FAMILY MEMBERS, but may consider DeRosa's Wife Suzanne – because of her experience & educational background – your thoughts – we can pay as a consultant so 1099, or do you want to do part time employee??? – your call here) - [Steve Dechiaro] Just want to make sure that we are getting our monies worth, very bad experiences with people claiming they are working from home

[Steve Dechiaro] Ok on investment bonus, but we keep this outside the base employment agreement

-----Original Message-----
From: Tom DeChiaro [mailto:tomde@suscom.net]
Sent: Friday, September 09, 2005 1:57 PM
To: sdechiaro@dsci-usa.com
Subject: RE: Draft Term Sheet

Steve,

What is the status of this?

Tom

-----Original Message-----
From: Tom DeChiaro [mailto:tomde@suscom.net]
Sent: Friday, September 02, 2005 3:33 PM
To: 'sdechiaro@dsci-usa.com'
Subject: Draft Term Sheet
Importance: High

Steve,

Based on our conversation last week please find a Draft term sheet.

Will the commercial division be a separate company? Will you still use i2STAR?

The way I see it, I will have 3 years to go in and do the following & make the commercial division profitable:

1. Evaluate the commercial division as it is today
2. Determine the business plan going forward including, but not limited to:
    a. Commercial simulators - (Technical & cost evaluation) recommendations & changes going forward
    b. Commercial software (a few products being updated for commercial sales & distribution
    c. New Business opportunities – Develop new opportunities for revenue & growth

I will continue to try and raise addition capital for DSCI with a bonus

structure as we discussed before 5% for investments I am directly responsible for and 3% for investments that I have an indirect responsibility for. i.e. if Dick brings in a player like Vince Cook etc.

This would be a very exciting opportunity as long as there is a commitment to stay the plan – and I have enough time and resources to accomplish it. I would require a fair amount of autonomy and would like your view of the organization charts for this division and the other groups within DSCI. This will help determine the level of matrix resources that can be drawn upon.

I have no issues with helping on the military side, as long as it is at the right level:
1. Lobby in DC
2. Sales and customer relationship calls
3. Customer briefings

I am not interested in playing an active part in specific projects. I want the opportunity to grow the commercial space as I have many ideas on how to do that.

My guess is we shoot for Oct. 15th Start – but I want contracts & terms signed by mid September.

Let me know if you have any questions & I look forward to your reply…
Thanks T


**Term Sheet**

Position/Title:         President & CEO, DSCI Commercial Division
Base Salary:            $165,000
Job Transition Cost:    $50,000 (Transition from IBM to DSCI)
Stock:                  I would like to discuss a stock options plan based on service & performance, however, if DSCI is sold or merged,
                        then I would want options to vest immediately. (We can discuss the terms later)
                        Also, I would like an equivalent of $15,000 in company stock from day one… So I can attend stock holder meetings, etc.
Other Comp:             401K, Medical Benefits, Employee Stock Plan – Fully vested
Incentives:             Cash & stock bonus tied to division performance – to be defined
Term:                   3 years – with options for more
Relocation:             Relocation to NJ will not required for this position & travel will be expensed
Admin Support:          I would require a part time 25 – 35 hours a week admin/exec assistant to work local at my main office. Salary range would be between $15 - $20 per hour and NO BENEFITS will be required

2/5/2008

### General items that must be further defined:

1. Reporting structure and organization charts
2. Scope definition for the commercial division
3. Current revenue & future targets for commercial division
4. Success criteria for commercial division
5. High level 5 year targets for the commercial division (size, scope & revenue)
6. Current and potential customers
7. Product extensions and expansion plans
8. Current & Future staff
9. 2005 & 2006 operating budget
10. Performance will be measured against Scope, Revenue and Success criteria!

2/5/2008